UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Lisa Ann Stufft, | ) | Civil Action No. 5:18-cv-1651-KDW |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| | ) | ORDER |
| Andrew M. Saul, Commissioner of | ) | |
| Social Security,[1] | ) | |
| | ) | |
| Defendant. | ) | |

This social security matter is before the court pursuant to 28 U.S.C. § 636(c) and Local Civil

Rule 83.VII.02 (D.S.C.) for final adjudication, with the consent of the parties, of Plaintiff's petition

for judicial review. Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial

review of a final decision the Commissioner of Social Security ("Commissioner"), denying her claim

for Supplemental Security Income ("SSI") pursuant to the Social Security Act ("the Act"). Having

carefully considered the parties' submissions and the applicable law, the court affirms the

Commissioner's decision for the reasons discussed herein.

I.      Relevant Background

A.      Procedural History

On March 15, 2016,[2] Plaintiff protectively filed for SSI under Title XVI of the Act, alleging

a disability onset date of January 5, 2015. Tr. 216-21. Plaintiff's application was denied initially on

November 22, 2016, Tr. 116, and upon reconsideration on March 29, 2017, Tr. 138.

Plaintiff requested a hearing before an ALJ, Tr. 158, and the ALJ conducted a hearing on

September 19, 2017, taking testimony from Plaintiff and Vocational Expert ("VE") Ryan Farrell, Tr.

---

[1] Andrew M. Saul became Commissioner of Social Security in June 2019. Commissioner Saul is hereby substituted for the former Acting Commissioner, Nancy A. Berryhill, as the named defendant in this action. *See* 42 U.S.C. § 405(g), Fed. R. Civ. P. 25(d).
[2] The Application Summary is dated April 26, 2016. Tr. 216. However, as reflected in the Disability Determination and Transmittal, Plaintiff's filing date is March 15, 2016. Tr. 116.

32-78. Representing Plaintiff at that hearing was her attorney, Brett A. Owens. Tr. 32. The ALJ denied Plaintiff's claim in a decision dated December 26, 2017. Tr. 10-27. Plaintiff requested review of this decision from the Appeals Council on February 23, 2018. Tr. 212. On April 16, 2018, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. Tr. 1-5. Plaintiff brought this action seeking judicial review of the Commissioner's decision in a Complaint filed June 15, 2018. ECF No. 1.

B.     Plaintiff's Background

Plaintiff was born in October 1968 and was 47 years old when she filed her application for SSI on March 15, 2016, and 46 years old as of the alleged onset date of January 5, 2015. Tr. 245. In her form Disability Report-Adult dated April 26, 2016, Plaintiff indicated she completed two years of college in September 2011. Tr. 235. She listed her past relevant work ("PRW") as relay operation/communication (Dec. 2004-Sept. 2005), temporary office assistant (Oct. 2005-April 2006), office manager (April 2006-Feb. 2008), secretary (Mar. 2008-May 2008), and medical transcriptionist (Mar. 2012-May 2012). Tr. 236. Plaintiff indicated she stopped working on May 21, 2012 because of her medical conditions which she listed as: chronic back pain, lower thoracic scoliosis, cyst on hand, degenerative disc disease, chronic kidney disease, depression, colonic polyps, gastrointestinal bleeding, type 3 paraesophageal hernia, sciatica, ongoing urinary tract infections, arthropathy, and dysphagia. Tr. 234. Plaintiff indicated she was 5'3" tall and weighed 140 pounds. *Id.*

In a Disability Report-Appeal dated January 3, 2017 Plaintiff indicated a change in her medical condition that occurred November 21, 2016. Tr. 261. Plaintiff noted that lab results indicated changes in her thyroid levels and an ongoing urinary tract infection. *Id.* Plaintiff noted she had "[f]atigue, excessive sleeping and [was] having difficulty concentrating." *Id.* She indicated she was "having mobility issues and it is impaired as cannot stand, sit or walk for long periods of time due to

the diagnoses. Am having issues with thyroid, kidney/urinary tract and gastrointestinal (upper and lower)." *Id.* Plaintiff indicated that it was difficult for her to see specialists because of her lack of insurance and financial coverage. She also indicated she had problems "trying to afford some medications, xrays and diagnostic testing." *Id.* In a subsequent Disability Report-Appeal dated April 13, 2017, Plaintiff indicated a change in her condition that occurred April 21, 2015. Tr. 272. Plaintiff noted that she was having difficulty walking and required "assistance of an apparatus" due to diagnoses related to her left hip, hands, knees, and ankles. *Id.* Plaintiff noted a change that occurred on April 21, 2016, of "limited physical mobility, narrowing of the joints, dizziness" and new conditions of myocardial infarction and decompressed bladder as of November 21, 2015. Tr. 272-73.

C.      Administrative Proceedings

On September 19, 2017, Plaintiff appeared with counsel at an administrative hearing in Columbia, South Carolina and testified regarding her application for SSI. Tr. 32. VE Ryan Farrell also appeared and testified at the hearing. *Id.*

1.  Plaintiff's Testimony

In response to questions from the ALJ Plaintiff testified that she was 48 years old and since the end of July she has been living in the Transitions shelter due to health and financial reasons. Tr. 37. Plaintiff testified that prior to that she lived in her parents' home in West Columbia. *Id.* Plaintiff testified that her mother died three years ago, and her father died a year-and-a-half ago. Tr. 38. Plaintiff stated that after her parents died and until she went to Transitions, her niece lived in the house with her "off and on." *Id.* Plaintiff testified that she was divorced and did not have any children or dependents. Tr. 39. Plaintiff stated that she no longer had a driver's license because five years prior it was suspended for unpaid tickets. *Id.* Plaintiff testified that before she moved to Transitions she used Medicaid transportation, or a friend or family member would drive her. Tr. 40. Plaintiff testified

that she graduated from high school and later received a certificate in medical transcription. *Id.* Plaintiff stated she worked in the medical transcription field for two or three months, but she could not keep up with the workload. Tr. 40-41. Plaintiff stated she never served in the military. Tr. 41. Plaintiff testified that she is right-handed, 5'3" tall, and weighed 158 pounds. *Id.*

In response to questions from her attorney, Plaintiff outlined her work history. Plaintiff testified that in 2008 she worked for two or three months for Keeler Landscape & Design scheduling appointments, answering phones, and typing and filing documents. Tr. 42. Prior to that she worked with Metro Blueprint & Supply (which bought out a company called iSqFt) where she organized documents for construction jobs. Plaintiff testified that she would occasionally have to lift 50 pounds. Tr. 42-44. Plaintiff testified that she left the job voluntarily because "it was a little bit heavier of a workflow than [she] could do by [her]self." *Id.* Plaintiff testified that she worked in a temporary position with Snack Time Distributors doing data entry while an employee of the company was on maternity leave. Tr. 44. Plaintiff confirmed that she also did secretarial work for Richard Miller & Associates in Jacksonville, and she did data entry for Kenneth Heatherman and Columbia Check Cashers. Tr. 45-46. Plaintiff testified that other than the job at iSqFt/Metro Blueprint & Supply she did not have any specific physical requirements of lifting and worked in an office setting. Tr. 46. The VE questioned Plaintiff briefly for clarification regarding employment dates and job duties. Tr. 46-48. Plaintiff confirmed that she never worked in a supervisory capacity in any of her past jobs. Tr. 48.

Plaintiff testified that the issues that prevent her from working are problems with her back, legs, feet, and gastrointestinal issues. Tr. 50. Plaintiff also testified that she was "kind of mentally a little bit slow." *Id.* Plaintiff testified that she has struggled with mental issues for 10-20 years. Tr. 51. Plaintiff testified that last year she was involuntarily admitted to the hospital for mental issues and was hospitalized for about two-and-a-half weeks. *Id.* Plaintiff stated that other than her regular doctor

prescribing antidepressants, she was not receiving currently any medical treatment for her mental condition. *Id.* Plaintiff described her mental state as sometimes being depressed, having memory problems, and occasional crying spells. Tr. 52.

Plaintiff described her typical day at Transitions. She testified that she normally wakes up at 6:30, gets dressed without assistance, and takes financial and health-related classes every day. Tr. 53-54. Plaintiff stated that meals are provided but she is responsible for cleaning her area. Tr. 55. Plaintiff testified that when she was living at home she would do "a little bit of spot cleaning" and would prepare microwave meals and sandwiches. Tr. 55-56. Plaintiff testified that she could stand for ten minutes before her "left hip and knee would start kind of going out on [her]." Tr. 57. She said they would sometimes become painful and sometimes go numb. *Id.* Plaintiff testified that she experiences problems with her back daily that consisted of pain in the lower to middle back. Tr. 57-58. Plaintiff stated that a lot of walking or sitting made it worse. Tr. 58. Plaintiff stated she could probably walk a city block before experiencing pain in her lower back that would be unbearable. *Id.* Plaintiff stated that after walking one block she would have to sit and rest for "probably about 30 minutes or to an hour." Tr. 59. Plaintiff testified that she has problems with her legs daily caused by walking or standing for long periods. She confirmed that if she were to walk she would not only have the back pain but would also have leg pain. *Id.* Plaintiff stated the pain was "a little worse in the left leg than the right." Tr. 60. She also testified to pain and swelling in her feet. *Id.* Plaintiff's counsel noted that she had been sitting for 35 minutes and asked at what point would she need to get up and move around. Plaintiff stated that although it gets uncomfortable she could sit for 45 minutes to an hour. *Id.* Plaintiff testified that when she was living at home the heaviest thing she would lift would be a gallon jug of water. Tr. 61. Plaintiff stated that she would leave home on average once a week to go to the grocery store. Tr. 61-62. Plaintiff testified that although someone would take her to the store she was

able to do the grocery shopping by herself. Tr. 62. Plaintiff stated that physical problems occurred while shopping if she walked too much or carried or tried to lift heavy items. Plaintiff stated that she had no mental problems related to grocery shopping but on prompting by her attorney stated she was a little bothered by being in crowds. *Id.* Plaintiff testified that when she was at home she would watch television or be on the internet. Tr. 63. Plaintiff stated that she had a Facebook account that she used once or twice a month. *Id.* Plaintiff stated her hobby was doll collecting and her dolls were still at the house. *Id.* Plaintiff stated that her niece and her friend were living in the house and paying the bills. Tr. 64. Plaintiff testified to having problems with short-term memory and with concentration. *Id.* Plaintiff stated that she currently sleeps in four-hour spurts, which makes her tired during the day. Tr. 64-65. Plaintiff testified that she smokes two-to-four cigarettes a day that she either buys or someone else gives her. Tr. 65. Plaintiff stated that she spends most of her time on the premises at Transitions unless she has a bus pass or leaves with a friend. Tr. 66. She testified that she does not socialize very often but does try to stay in touch with friends. *Id.*

The ALJ resumed questioning of Plaintiff. Plaintiff testified that she still does cross-stitch "a couple of times a week for a little while." Tr. 66. She stated that her room at Transitions is like a dormitory and she shares it with 10 or 15 women. Tr. 67. Plaintiff testified that she does not have a problem getting along with the other women and she is allowed to keep her tablet and cell phone. *Id.* Plaintiff confirmed that in the past she had surgery on her wrists and she stated that she has problems occasionally with both hands with stiffness, dropping things, or being unable to lift. Tr. 67-68. Plaintiff stated that she has arthritis gloves that she wears a couple of times a week. She acknowledged that her left hand is worse than the right and she is right-handed. Tr. 68. Plaintiff stated she sometimes had problems with fine fingering actions. Tr. 68-69. Plaintiff confirmed that in addition to taking classes at Transitions she is required to look for work. Tr. 69. Plaintiff stated that she spoke with

vocational rehabilitation and they required that she obtain a doctor's release before she could go to

work. *Id.* Plaintiff stated she has not spoken with her doctor about going back to work. *Id.*

        2.   VE's Testimony

The ALJ asked the VE to classify Plaintiff's PRW, but before doing so the VE confirmed with

Plaintiff that she also worked from 2002 to 2005 for a private company as a relay operator for the

deaf and hard-of-hearing. Tr. 70-71. The VE identified Plaintiff's PRW as a receptionist, Dictionary

of Occupational Titles ("DOT") number 237.367-038, SVP of 4, sedentary; administrative clerk,

DOT number 219.362-010, SVP of 4, light but performed as medium; telephone operator, DOT

number 235.662-022, SVP of 3, sedentary. Tr. 71.

The ALJ asked the VE to consider that work background for a younger individual with at least

a high school education and with medical impairments that limit her to light work requiring lifting

only 20 pounds occasionally and 10 pounds frequently. Tr. 72. The ALJ posed the following

additional limitations:

> The individual can sit, stand and walk for six hours a day each. She . . . has the
> following non-exertional limitations. She can only occasionally climb ramps and
> stairs. She can never climb ladders, ropes or scaffolds. She can only occasionally
> balance, stoop, kneel, crouch or crawl. She cannot work at heights or around hazardous
> machinery. She cannot work where exposed to concentrated vibration or in an
> environment that has excessive noise. She can only frequently handle objects and
> frequently finger objects with either hand. . . . In addition, the individual is limited to
> performing the simple/routine tasks of unskilled work in occupations that require only
> simple/work-related decisions. She can occasionally have contact with co-workers and
> supervisors. She can have no contact with the general public and those are the
> limitations in my first hypothetical.

Tr. 72-73. The ALJ asked if that individual could perform any of Plaintiff's past work and the VE

responded in the negative. Tr. 73. The VE testified that there would be light, unskilled jobs with an

SVP of 2 that would match the description and identified the following representative examples:

marker, DOT number 209.587-034, with 168,000 available nationally; order caller, DOT number

209.667-014, with 86,000 available nationally; and apparel stock checker, DOT number 299.667-014, with 80,000 available nationally. Tr. 73-74.

The ALJ asked how the ability to perform the identified jobs would be affected if he added the limitation that the individual would be off task or non-productive a minimum of 20 percent of the workday because of her impairments. Tr. 74. The VE testified that limitation "would preclude any competitive employment." *Id.* The ALJ asked if there would be any unskilled work available for an individual who missed three or more days of work per month and the VE responded in the negative. *Id.*

Plaintiff's counsel had no questions for the VE. Tr. 75.

II.     Discussion

A.      The ALJ's Findings

In his December 26, 2017 decision, the ALJ made the following findings of fact and conclusions of law:

> 1.      The claimant has not engaged in substantial gainful activity since March 15, 2016, the application date (20 CFR 416.971 *et seq.*).
>
> 2.      The claimant has the following severe impairments: degenerative disc disease, scoliosis, affective disorder and anxiety disorder (20 CFR 416.920(c)).
>
> 3.      The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).
>
> 4.      After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform less than the full range of light work as defined in 20 CFR 416.967(b) except the claimant could lift, carry, push and pull 20 pounds occasionally and 10 pounds frequently. The claimant could sit 6 hours in an 8-hour workday, stand 6 hours each in an 8-hour workday, and walk 6 hours in an 8-hour workday. The claimant could frequently use the right hand for handling, fingering and feeling and operating hand controls. She

could occasionally balance, stoop, kneel, crouch, crawl and climb stairs/ramps, but should never climb ladders, ropes or scaffolds. The claimant should avoid exposure to unprotected heights, vibration and moving mechanical parts. The claimant is limited to performance of simple, routine tasks and limited to simple work-related decisions. She could occasionally respond appropriately to supervisors and co-workers, but should never have interaction with the general public.

5.      The claimant is unable to perform any past relevant work (20 CFR 416.965).

6.      The claimant was born on October 23, 1968 and was 47 years old, which is defined as a younger individual age 18-49, on the date the application was filed (20 CFR 416.963).

7.      The claimant has at least a high school education and is able to communicate in English (20 CFR 416.964).

8.      Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

9.      Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969(a)).

10.     The claimant has not been under a disability, as defined in the Social Security Act, since March 15, 2016, the date the application was filed (20 CFR. 416.920(g)).

Tr. 15, 18, 25-27.

B.      Legal Framework

1.      The Commissioner's Determination-of-Disability Process

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are "under a disability," defined as:

inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]

42 U.S.C. § 423(d)(1)(A).

To facilitate a uniform and efficient processing of disability claims, regulations promulgated under the Act have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g., Heckler v. Campbell*, 461 U.S. 458, 460 (1983) (discussing considerations and noting "need for efficiency" in considering disability claims). An examiner must consider the following: (1) whether the claimant is working; (2) whether the claimant has a severe impairment; (3) whether that impairment meets or equals an impairment included in the Listings;[3] (4) whether such impairment prevents claimant from performing PRW; and (5) whether the impairment prevents the claimant from performing specific jobs that exist in significant numbers in the national economy. *See* 20 C.F.R. § 416.920. These considerations are sometimes referred to as the "five steps" of the Commissioner's disability analysis. If a decision regarding disability may be made at any step, no further inquiry is necessary. 20 C.F.R. § 416.920(a)(4) (providing that if Commissioner can find claimant disabled or not disabled at a step, Commissioner makes determination and does not go on to the next step).

A claimant is not disabled within the meaning of the Act if he can return to PRW as it is customarily performed in the economy or as the claimant actually performed the work. *See* 20 C.F.R.

---

[3] The Commissioner's regulations include an extensive list of impairments ("the Listings" or "Listed impairments") the Agency considers disabling without the need to assess whether there are any jobs a claimant could do. The Agency considers the listed impairments, found at 20 C.F.R. Part 404, Subpart P, Appendix 1, severe enough to prevent all gainful activity. 20 C.F.R. § 404.1525. If the medical evidence shows a claimant meets or equals all criteria of any of the listed impairments for at least one year, he will be found disabled without further assessment. 20 C.F.R. § 416.920(a)(4)(iii). To meet or equal one of these Listings, the claimant must establish that his impairments match several specific criteria or be "at least equal in severity and duration to [those] criteria." 20 C.F.R. § 416.926; *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); *see Bowen v. Yuckert*, 482 U.S. 137, 146 (1987) (noting the burden is on claimant to establish his impairment is disabling at Step 3).

Subpart P, § 416.920(a), (b); Social Security Ruling ("SSR") 82–62 (1982). The claimant bears the burden of establishing his inability to work within the meaning of the Act. 42 U.S.C. § 423(d)(5).

Once an individual has made a prima facie showing of disability by establishing the inability to return to PRW, the burden shifts to the Commissioner to come forward with evidence that claimant can perform alternative work and that such work exists in the regional economy. To satisfy that burden, the Commissioner may obtain testimony from a VE demonstrating the existence of jobs available in the national economy that claimant can perform despite the existence of impairments that prevent the return to PRW. *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002). If the Commissioner satisfies that burden, the claimant must then establish the inability to perform other work. *Hall v. Harris*, 658 F.2d 260, 264–65 (4th Cir. 1981)*; see generally Bowen*, 482 U.S. at 146, n.5 (regarding burdens of proof).

2. The Court's Standard of Review

The Act permits a claimant to obtain judicial review of "any final decision of the Commissioner made after a hearing to which he was a party." 42 U.S.C. § 405(g). The scope of that federal court review is narrowly tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the Commissioner applied the proper legal standard in evaluating the claimant's case. *See id.*, *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002) (citing *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990)).

The court's function is not to "try these cases de novo or resolve mere conflicts in the evidence." *Vitek v. Finch*, 428 F.2d 1157, 1157–58 (4th Cir. 1971); *see Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (citing *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). Rather, the court must uphold the Commissioner's decision if it is supported by substantial evidence.

"Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 390, 401; *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005). Thus, the court must carefully scrutinize the entire record to assure there is a sound foundation for the Commissioner's findings, and that her conclusion is rational. *See Vitek*, 428 F.2d at 1157–58; *see also Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed "even should the court disagree with such decision." *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

C.     Analysis

Plaintiff alleges that the ALJ erred in (1) failing to consider all of Plaintiff's impairments, both physical and mental, in combination; (2) failing to consider all of the medical evidence regarding Plaintiff's statements of pain and functional limitations; (3) assigning different weights to conflicting testimony without explanation; and (4) finding no evidence to support a finding of back pain. Pl.'s Br. 2, ECF No. 11.

1.    ALJ's Consideration of Plaintiff's Combined Impairments

Plaintiff asserts that the "ALJ erred by failing to assess Plaintiff's severe and non-severe impairments, in combination, in finding that Plaintiff is not disabled." Pl.'s Br. 3. Plaintiff argues that the ALJ did not consider the combined impact of her impairments throughout the disability determination process as required by the regulations. *Id.* at 4.

The regulation related to the consideration of multiple impairments provides that in determining whether an individual's physical or mental impairments "are of a sufficient medical severity that such impairment or impairments could be the basis of eligibility" for benefits, the ALJ "will consider the combined effect of all . . . impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity." 20 C.F.R. § 416.923. "If [the

ALJ finds] a medically severe combination of impairments, the combined impact of the impairments will be considered throughout the disability determination process." *Id.* In *Walker v. Bowen*, 889 F.2d 47 (4th Cir. 1989), the court held that "the ALJ must adequately explain his or her evaluation of the combined effects of the impairments." *Id.* at 50.

Here, at Steps Two and Three of the sequential evaluation process the ALJ determined Plaintiff had the severe impairments of degenerative disc disease, scoliosis, affective disorder, and anxiety disorder and found that she had no Listing-level impairments. Tr. 15-17. The ALJ then determined Plaintiff had the residual functional capacity ("RFC") for less than the full range of light work. Tr. 18. The ALJ discussed Plaintiff's impairments both singly and in combination throughout his RFC analysis and concluded that his assessment was an accurate reflection of Plaintiff's RFC in light of the combined effect of all her impairments. Tr. 19-25.

It is evident to the court that the ALJ did, in fact, consider the combined effects of Plaintiff's impairments and, thus, accepts the truth of the ALJ's assertion. *See Sims v. Colvin,* Civil Action No. 0:14–1663–MGL–PJG, 2015 WL 5525096, at *6 (D.S.C. Sept. 17, 2015) ("[T]he Court is satisfied that, when the ALJ's opinion is read as a whole, it is clear that he considered the combined effect of Plaintiff's combined impairments. Further, '[the Court's] general practice, which [it] see[s] no reason to depart from here, is to take a lower tribunal at its word when it declares that it has considered a matter.'" *Hackett v. Barnhart*, 395 F.3d 1168, 1173 (10th Cir. 2005)).

Furthermore, although Plaintiff argues the ALJ failed to consider her impairments in combination, Plaintiff does not explain how this alleged failure affected the ALJ's ultimate conclusion. As the court concluded in *Wright v. Astrue*, Plaintiff has "done much less than is required." *Wright v. Astrue*, No. CIV.A. 2:10-2449-DCN, 2011 WL 5403104, at *8 (D.S.C. Oct. 18,

2011), *report and recommendation adopted,* No. CIV. 2:10-2449 DCN, 2011 WL 5403070 (D.S.C.

Nov. 8, 2011). The *Wright* court noted:

> The plaintiff's objection stops largely at the accusation that the ALJ's consideration is too thin, which, as the plaintiff contends, is the appropriate legal point, considering the applicable standard of review, but fails to take the additional step of suggesting how the outcome could have been different. In other words, there is a failure to demonstrate anything more than the harmlessness of the error.

> To restate, the Court believes that the ALJ satisfied his obligation to treat the combined effects of all relevant impairments, in the first instance, and, further, that the plaintiff has not offered any reason to conclude that more would have produced a different result.

*Id.* The undersigned finds the ALJ did not err in his consideration of Plaintiff's combined

impairments, and concludes that even if he had, any such error would be harmless in light of Plaintiff's

failure to identify any impairment the ALJ did not consider or the impact of a more detailed analysis

on the ALJ's decision.

### 2. ALJ's Credibility Determination

Plaintiff's second allegation of error is that the ALJ failed to consider all of the medical

evidence in making his credibility determination. Pl.'s Br. 4. Specifically, Plaintiff argues that her

"testimony is entirely consistent with objective medical evidence found in the records of Claimant's

treating PA-C, Tonna Coleman" regarding her ability to stand and walk for long distances. *Id.* Plaintiff

contends the "ALJ provided no reasons why this testimony was discredited or not considered" in

determining her RFC. *Id.* at 5. The Commissioner argues that the "ALJ correctly found and fully

explained through his discussion and citation to the exhibits that [Plaintiff's] subjective statements,

even though transcribed in Ms. Coleman's statements, were not corroborated by the record as a

whole." Def.'s Br. 18.

In March 2016 the Social Security Administration published a new ruling, SSR 16-3p, for

evaluation of symptoms in disability claims. SSR 16-3p supersedes SSR 96-7p, eliminates use of the

term "credibility," and clarifies that subjective symptom evaluation is not an examination of an individual's character. 2016 WL 1119029 at *1. Although SSR 16-3p eliminates the assessment of credibility, it requires assessment of most of the same factors to be considered under the prior ruling, SSR 96-7p, including the two-step process for evaluation of symptoms. *Id.* at *3-4. The two-step process requires that first the ALJ must determine whether an individual has a medically determinable impairment that could reasonably be expected to produce her alleged symptoms, and then second, the ALJ is to evaluate the record as a whole, including both objective and subjective evidence, to evaluate the intensity and persistence of the individual's symptoms and determine the extent to which the symptoms limit her ability to perform work-related activities. *Id.*

Here, the ALJ identified Plaintiff's medically determinable impairments, discussed her testimony regarding her functional limitations, and noted her reported statements about her activities. Tr. 18-19. The ALJ then outlined the medical evidence including treatment records dated prior to Plaintiff's alleged onset date. Tr. 19-21. The ALJ discussed records from Brookland-Cayce Medical Practice dated July 2014 through July 2017 where Tonna Coleman, PA-C was Plaintiff's primary treatment provider. Tr. 21. The ALJ considered the two statements provided by Ms. Coleman to the Department of Social Services in January 2015 and November 2016 wherein she provided functional limitations for Plaintiff and deemed her permanently disabled. *Id.*

Citing to two Fourth Circuit cases, the regulations, and SSR 16-3p, the ALJ noted the following:

> In evaluating the claimant's subjective allegations, consideration must be given to both medical and non-medical evidence, including the use and effects of medications; precipitating and aggravating factors; duration and frequency of the symptoms; resultant functional restrictions; daily activities; treatment and other alternative measures, besides medications, for the relief of pain; the consistency between the level and frequency of treatment and the level of complaints; the extent to which prescribed treatment has been followed; the consistency of the claimant's allegations with prior statements made about the symptoms elsewhere in the record to other medical sources,

to family, friends, agency personnel and other lay persons; and the consistency of the allegations with reports and observations by others concerning claimant's activities, behavior and efforts to work (Craig v. Chater, 76 F.3d 585 (4th Cir. 1996)); (Mickles v. Shalala, 29 F.3d 918, 922 (4th Cir. 1994)); (20 CFR 404.1529(b) and 416.929(b)); and (Social Security Ruling 16-3p).

Tr. 22. The ALJ then determined:

After careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to produce the above-alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision. Accordingly, these statements have been found to affect the claimant's ability to work only to the extent they can reasonably be accepted as consistent with the objective medical and other evidence.

Id. The ALJ cited to Plaintiff's allegation of disability as of January 5, 2015 and PA Coleman's physician's statement of that same date noting that Plaintiff could work part-time for 10 hours a week. Id. The ALJ noted that the "record does not contain any records of any ongoing treatment at the time she alleges she became unable to perform work activity." Id. The ALJ went on to discuss objective evidence regarding Plaintiff's back, legs, and hands. Tr. 22-23. The ALJ found that "[a]lthough the evidence shows that the claimant has [] medically determinable impairments that could reasonably be expected to produce the symptoms alleged, the evidence does not support the claimant's allegations of symptoms that render her totally disabled from employment." Tr. 23. The ALJ outlined evidence related to Plaintiff's activities of daily living and her behavior at the administrative hearing. Tr. 23-24. The ALJ concluded:

The claimant's allegations concerning her impairments, symptoms and the ability to work are not substantiated by the total evidence of record. The record does not contain documentation or any other treatment notes, office records, hospital records or mental health records indicating the claimant received any specialized medical care. Therefore, I do not find the claimant['s] allegations fully consistent with the evidence with regard to her allegations of pain so persistent and frequent that she is unable to perform any work activity (Social Security Ruling 96-4p). The record does not contain documentation of any significant adverse side effects of any medication. She remained on conservative treatment without any surgical intervention. Review of the entire

> record shows the claimant retains the capacity for unskilled light work activity, with the limitations described above in her residual functional capacity.

Tr. 24.

When considering whether an ALJ's determinations are supported by substantial evidence, a district court does not replace its own assessments for those of the ALJ; rather, the court scrutinizes the evidence to determine if it is sufficient to support the ALJ's conclusions. In reviewing the record for substantial evidence, the court does not re-weigh conflicting evidence, reach independent determinations as to credibility, or substitute its own judgment for that of the Commissioner. *Hays v. Sullivan,* 907 F.2d at 1456. Because the ALJ had the "opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight." *Shively v. Heckler,* 739 F.2d 987, 989 (4th Cir. 1984).

The court finds that the ALJ properly applied SSR 16-3p. He did not discuss Plaintiff's credibility but instead he determined that Plaintiff's statements regarding her symptoms were "not substantiated by the total evidence of record." Tr. 24. Upon review, the undersigned finds that this determination is supported by substantial evidence.

### 3. ALJ's Consideration of the Medical Evidence

Plaintiff argues that the ALJ erred by arbitrarily assigning weight to conflicting testimony without any meaningful explanation. Pl.'s Br. 5. Plaintiff notes that the ALJ gave little weight to the opinions made by PA-C Coleman that reported Plaintiff to be permanently disabled and the ALJ found these opinions inconsistent with the findings of other medical professionals in the record. *Id.* Plaintiff argues that "[s]imply making a determination regarding disability where no other doctor has opined, does not make the evaluation 'inconsistent' with the record." *Id.* Plaintiff asserts that Ms. Coleman's determination "should have been given special consideration." *Id.* at 5-6.

The ALJ stated that "consideration has been given to the opinions of treating and examining physicians included in the medical evidence of record." Tr. 24. Absent evidence to the contrary, the court takes the ALJ at his word. *Reid v. Comm'r of Soc. Sec.*, 769 F.3d 861, 865 (4th Cir. 2014) (citing *Hackett v. Barnhart*, 395 F.3d 1168, 1173 (10th Cir. 2005)). As noted in the preceding section, Ms. Coleman provided two Physician Statements in January 2015 and November 2016 wherein she provided functional limitations for Plaintiff and deemed her permanently disabled. The ALJ gave these opinions little weight first noting the lack of "treatment records to support such a debilitating condition of the claimant." Tr. 24. The ALJ found the "opinions were not consistent with the overall findings of other health professionals included in the record." *Id.* The ALJ stated that none of Plaintiff's other treating or examining physicians offered any opinion regarding disability and no other physician assessed any restrictions or limitations, limited Plaintiff's physical activities, or limited her ability to perform activities of daily living. *Id.* The ALJ concluded:

> While all opinions are considered at the hearing level, the issue of whether the claimant is disabled is an issue that is reserved to the Commissioner (Social Security Ruling 96-5p). Opinions on issues reserved to the Commissioner must be carefully considered to determine the extent to which they are supported by the record in its entirety (20 CFR 404.1527(d)(2), 416.927(d)(2) and Social Security Ruling 85-5p).

*Id.* Ms. Coleman's opinion regarding Plaintiff's permanent disability is an opinion reserved to the Commissioner and is not entitled to any special consideration.

Plaintiff also notes that "the ALJ inexplicably gave 'little weight' to the mental assessments of Dr. Waller (Exhibit B2A) and Dr. Laskis (Exhibit B5A) who the ALJ stated also have 'substantial experience applying Social Security disability law . . . and reviewed evidence from varied sources.'" Pl.'s Br. 6. Plaintiff contends this "arbitrary weighing of testimony without any explicit reasoning, is evidence that the ALJ abused its discretion in evaluating the evidence by failing to properly weigh the entire record in making his residual functioning capacity determination." *Id.* The Commissioner

states that the ALJ inadvertently misidentified the specialties of the State agency experts when assigning weight to their opinions. Def.'s Br. 20. The Commissioner argues that Plaintiff "was not, and has not shown that she was prejudiced by this inadvertent error" and "remand for a re-discussion of the weight accorded would be futile." *Id.* at 21. On reply Plaintiff continues to assert that the ALJ did not abide by the regulations and assigned weight to the opinion evidence arbitrarily. Pl.'s Reply, ECF No. 13 at 5.

The State agency medical consultants reviewed Plaintiff's records and provided assessments. In conjunction with Plaintiff's initial disability determination Dr. Lindsey Crumlin completed a physical RFC assessment on November 21, 2016 indicated that Plaintiff could occasionally lift and/or carry 50 pounds and frequently lift and/or carry 25 pounds; stand and/or walk, and sit for about six hours in an eight-hour workday; frequently climb ramps, stairs, ladders/ropes/scaffolds; frequently balance, stoop, kneel, crouch, and crawl; and she had no manipulative, visual, communicative, or environmental limitations. Tr. 110.

Dr. Edward Waller completed a mental RFC assessment on September 30, 2016 and determined Plaintiff had no understanding and memory limitations, but she did have sustained concentration and persistence limitations. Tr. 112. He found that Plaintiff was not significantly limited in her ability to carry out very short and simple instructions, or detailed instructions, but she was moderately limited in her ability to maintain attention and concentration for extended periods. He also found she was moderately limited in her ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances. *Id.* He indicated Plaintiff was not significantly limited in her ability to sustain an ordinary work routine without special supervision, to work in coordination with or in proximity to others without being distracted by them, and in her ability to make simple work-related decisions. He noted Plaintiff was moderately limited in the ability to

complete a normal workday and workweek without interruptions from psychologically-based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. *Id.* With regard to social interaction limitations, Dr. Waller opined that Plaintiff was moderately limited in the ability to interact appropriately with the general public and to accept instructions and respond appropriately to criticism from supervisors. *Id.* She was not significantly limited in the ability to ask simple questions or request assistance, to get along with coworkers or peers without distracting them or exhibiting behavioral extremes, and to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness. Tr. 112-13.

On reconsideration of Plaintiff's application for disability Dr. William Lindler completed a physical RFC assessment on March 24, 2017, with the same findings as Dr. Crumlin. Tr. 131-32. Dr. Timothy Laskis completed a mental RFC assessment on March 29, 2017, with the same findings as Dr. Waller. Tr. 134.

The ALJ considered the reports of the State agency medical consultants. Tr. 25. The ALJ prefaced his discussion of the opinions with the following statements:

> As the medical opinions of expert physicians, [the reports] cannot be ignored (Social Security Ruling 96-5p). However, as those of non-examining medical sources, their opinions are weighed by stricter standards, based to a greater degree on medical evidence, qualifications, degree of specialization and clarity of explanations for their opinions, which can be given weight only insofar as they are supported by the whole record, including new evidence received after their opinions were rendered (Social Security Ruling 96-6p). In accordance with Social Security Ruling 96-6p, I have considered the administrative findings of fact made by the State Agency medical consultants to the effect that the claimant can perform a range of work.

*Id.* The ALJ stated that gave "weight" to the physical assessments of Drs. Crumlin and Lindler, and he accorded "little weight to the mental consultant assessments of Dr. Edward Waller (Exhibit B2A) and Dr. Timothy Laskis (Exhibit B5A), who are psychological specialists who have substantial

experience applying Social Security disability law and policy and reviewed evidence from varied sources." *Id.* The ALJ determined the following:

> The State Agency consultants concluded that the claimant retained the residual functional capacity to perform work activity, and their conclusions are not contradicted by other medical opinions of record, or by any testimony, and are thus consistent with the totality of the record. Consequently, I have given their conclusions significant weight. The evidence as a whole more persuasively establishes the residual functional capacity described above.

*Id.*

Plaintiff takes issue with the fact that the ALJ noted that both the physical and mental consultants had "'substantial experience applying Social Security disability law . . . [and had] reviewed evidence from varied sources'" yet he gave "weight" to physical assessments and "little weight" to the mental assessments. Pl.'s Br. 6. Plaintiff argues this "arbitrary weighing of testimony, without any explicit reasoning, is evidence that the ALJ abused its [sic] discretion in evaluating the evidence by failing to properly weigh the entire record in making his residual functioning capacity determination." *Id.*

The court disagrees. As noted above, the ALJ started his discussion with a detailed explanation of how he would weigh the opinions of the State Agency consultants according to Social Security rulings. Although the consultants may have the same level of experience, it does not follow necessarily that their opinions would be entitled to the same weight. As he was required to do, the ALJ considered other evidence obtained after their assessments were made and found their conclusions to be uncontradicted by other medical opinions in the record or by testimony, and therefore "consistent with the *totality of the record*." Tr. 25 (emphasis added). To the extent the ALJ erred by not providing a specific reason for giving little weight to the opinions of the psychologists, the court finds this to error to be harmless as the ALJ gave significant weight to the ultimate conclusions that Plaintiff retained the capacity to perform work activity. *McAlister v. Colvin*, No.

CIV.A. 1:12-3363-RMG, 2014 WL 2526896, at *11 (D.S.C. June 4, 2014) (finding that in light of the record, "the ALJ's failure to adequately explain his reasons for discounting [the doctor's] opinion was harmless error.") (citing *Mickles v. Shalala,* 29 F.3d 918, 921 (4th Cir.1994) (affirming denial of benefits where the ALJ erred in evaluating a claimant's pain because "he would have reached the same result notwithstanding his initial error")).

### 4. ALJ's Finding Regarding Back Pain

In Plaintiff's final argument she notes that despite finding that she "suffers from two severe physical impairments of the back, the ALJ erroneously found that there was 'no evidence of an impairment that would cause back pain' in making his residual functioning capacity determination." Pl.'s Br. 6. Plaintiff argues this finding is inconsistent with other findings made by the ALJ regarding Plaintiff's back pain. The Commissioner argues that in the context of the ALJ's discussion, he "inadvertently omitted putting the word 'disabling' in front of 'back pain' (Tr. 23)." Def.'s Br. 19.

The court finds that both Plaintiff and Defendant have misinterpreted the ALJ's decision. The ALJ did not find that there was no evidence in the record to support an impairment that causes back pain. Instead the ALJ noted that "*the treatment records and consultative examinations* show . . . no evidence of an impairment that would cause back pain." Tr. 23 (emphasis added). Throughout his decision the ALJ cited to specific occurrences where Plaintiff alleged back pain. He first recounts Plaintiff's testimony at the administrative hearing where she testified that she has "problems with back pain on a daily basis." Tr. 19. He notes that in 2014, prior to Plaintiff's onset date, she was seen in the emergency room for various complaints including low back pain, scoliosis, and lumbago. Tr. 19-20. In 2015 and 2016 she was also seen in the emergency room for chronic back pain. Tr. 20. Plaintiff underwent a consultative examination with Dr. Motycka in November 2016. The ALJ noted that "Dr. Motycka diagnosed allegations of chronic lower back pain, thoracic spondylosis and

degenerative disc disease. She had normal range of motion and her back was non-tender." Tr. 20-21. The ALJ also discussed the findings of PA-C Coleman who diagnosed Plaintiff with "scoliosis of thoracic spine [and] degenerative disc disease" and saw Plaintiff for various other complaints including mid-back pain. Tr. 21. The ALJ noted that Ms. Coleman's treatment records "repeatedly showed physical examinations were within normal limits with reported thoracic and lumbar tenderness." *Id.*

In considering Plaintiff's subjective allegations the ALJ noted that "[d]espite her complaints of continued mid and lower back pain that radiated down her legs and feet, she has had no surgery or any other orthopedic treatment." Tr. 22-23. The ALJ noted Plaintiff's testimony that "she continues to be able to perform all activities of daily living without assistance. Consultative examinations (Exhibits B14F and B16F), show that, despite her subjective complaints, she has full range of motion of her back with no radiation into her legs, no weakness and no neurological deficits." Tr. 23.

It was after making these findings that the ALJ made his observation that the treatment records and consultative exams showed a lack of evidence of an impairment causing back pain. The court finds that the ALJ did indeed consider the entire record in making his decision and substantial evidence supports his findings.

III.    Conclusion

The court's function is not to substitute its own judgment for that of the ALJ, but to determine whether the ALJ's decision is supported as a matter of fact and law. Based on the foregoing, the court finds that Plaintiff has not shown that the Commissioner's decision was unsupported by substantial evidence or reached through application of an incorrect legal standard. *See Craig,* 76 F.3d at 589; *see also* 42 U.S.C. § 405(g). Therefore, it is hereby ORDERED that the Commissioner's decision be affirmed.

IT IS SO ORDERED.

August 6, 2019                                    Kaymani D. West
Florence, South Carolina                          United States Magistrate Judge